# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**TIMOTHY J. BURKE ROZZETTI,**

**Plaintiff,**

**v.**

**FORD MOTOR COMPANY, ET AL.,**

**Defendants.**

CASE NO. 17-1763 (GAG)

## OPINION AND ORDER

Timothy J. Burke Rozzetti ("Plaintiff") filed the present complaint against Ford Motor Company and John Doe 1 to 100 (collectively "Defendants"). Plaintiff alleges damages resulting from manufacturing and design defects of the driver's airbag and seatbelt during a single-vehicle collision of his 2004 Ford Sport Trac Explorer ("Explorer"). Plaintiff brings this action pursuant to 28 U.S.C. §1332. Pending before the Court is Defendant's Motion for Summary Judgment claiming that Plaintiff's expert witness does not posses the necessary qualifications in the areas of airbag deployment, automotive engineering, and design. (Docket No. 29). Defendant avers that the lack of expert evidence results in Plaintiff being unable to prove a defect in the design or manufacture of the driver's airbag and seatbelt. Id. After reviewing the parties' submissions and pertinent law, the Court **DENIES** Defendant's motion for summary judgment.

I.     **Relevant Factual Background**

On July 6, 2016 Plaintiff lost control of his Explore and struck a guard rail on highway #2 in San Juan. (Docket Nos. 27 ¶ 1; 37 ¶ 1). Plaintiff was wearing his seatbelt at the time of the

1

**Civil No. 17-1763 (GAG)**

accident. (Docket Nos. 27 ¶ 2; 37 ¶ 2). Plaintiff claims his Explorer was defectively designed and/or manufactured because his airbag failed to deploy and his seatbelt failed to restrain him, which as a result caused Plaintiff various injuries and traumas. (Docket Nos. 27 ¶ 3, 4; 37 ¶ 3, 4).

1. Plaintiff's Expert Witness

Plaintiff's expert, engineer Iván Baiges ("Eng. Baiges") has a Bachelor of Science Mechanical Engineering from the University of Puerto Rico (UPR) Mayagüez; a Masters in Mechanical Engineering from the Massachusetts Institute of Technology (MIT), and a Doctorate in Mechanical Engineering from the University of Florida. (Docket Nos. 37 ¶ 1; 38 ¶ 1). Plaintiff's expert is a professor at the Department of Engineering Sciences and Materials of the School of Engineering in the UPR Mayagüez with 24 years of teaching experience. (Docket Nos. 37 ¶ 2; 38 ¶ 2). He teaches courses in Engineering Sciences on Statics, Dynamics and Mechanics of Materials, Fundamentals of Materials Sciences and Engineering, Machine Design and Product Design (which include product safety and product failure analysis). Id. During his tenure, he created and taught the course *INGE 5996 – Special Topics - Forensic Engineering and Accident Reconstruction* (advanced undergraduate course) at UPR Mayagüez and currently teaches special topic courses in accident reconstruction and forensic engineering and applies engineering sciences to accidents in general. (Docket Nos. 37 ¶ 4, 7, 8; 38 ¶ 4, 7, 8).

Eng. Baiges has experience in product testing, experimentation and failure analysis and has also been selected multiple times as the best Professor of the Department of General Engineering (2010 – 2014). (Docket Nos. 37 ¶ 3; 38 ¶ 3). He has worked on different product liability, design defect cases, slip and falls and vehicle accident reconstruction. (Docket Nos. 37 ¶ 6; 38 ¶ 6). Additionally, he has participated in over 100 cases as expert witness and has been qualified as an expert witness in state court (Mayaguez, Aguadilla, San Juan, Bayamon, Humacao, Ponce, Caguas,

Utuado, Aibonito) and Federal Court. Id. Finally, he considers himself an expert in accident reconstruction and biomechanics, and as part of his experience in accident reconstruction has become knowledgeable about the operation of seatbelts and airbags as a passenger restraint device. (Docket Nos. 37 ¶ 11, 12; 38 ¶ 11, 12).

However, Eng. Baiges does not consider himself an automotive engineer; that is, a specialist in automobile design. (Docket Nos. 27 ¶ 5; 37 ¶ 5). He has never specifically testified as an expert regarding airbag or seatbelt design.[1] (Docket Nos. 27 ¶ 6; 37 ¶ 6). Nor has he had any specific experience in airbag sensors design or in seatbelt sensor design. (Docket Nos. 27 ¶ 23; 37 ¶ 23). Furthermore, he has never dealt with airbag sensor calibration, nor seen an airbag calibration report, and has no specific experience in airbag threshold settings or seatbelt sensors design. (Docket Nos. 27 ¶ 24-29; 37 ¶ 24-29).

2. Vehicle Inspection

An inspection of the Explorer performed by Eng. Baiges showed that there was considerable damage to the front of the vehicle. (Docket Nos. 37 ¶ 20, 21; 38 ¶ 20, 21). The inspection exhibited that the steering wheel exhibited deformation from the impact and that the passenger's air bag deployed. (Docket Nos. 37 ¶ 25, 26; 38 ¶ 25, 26). The fact that the passenger's air bag deployed suggests that the crash sensor detected an event that required air bag deployment. (Docket Nos. 37 ¶ 27; 38 ¶ 27). Nonetheless, the inspection disclosed that the driver's front air bag did not deploy. (Docket Nos. 37 ¶ 28; 38 ¶ 28).

The Explorer's inspection further demonstrated that the deformed steering wheel and the chest injuries sustained by Plaintiff indicate that he underwent forward motion. (Docket Nos. 37 ¶

---

[1] Nonetheless in his courses he teaches the topics of material testing, standards, and seatbelt testing. (Docket Nos. 27 ¶ 6; 37 ¶ 6).

3

30; 38 ¶ 30). Similarly, it displayed that the driver's seatbelt is locked and cannot be retracted or expanded. (Docket Nos. 37 ¶ 31; 38 ¶ 31). Finally, the inspection presented that having one frontal air bag deploy and the other not deploy is indicative of a defective operation of the nondeployed air bag or other parts of the system that would have prevented this air bag to deploy. (Docket Nos. 37 ¶ 29; 38 ¶ 29)[2].

3. <u>Eng. Baige's Report</u>

Eng. Baiges issued a Technical Report Update ("Report") on October 15, 2018. (Docket Nos. 37 ¶ 34; 38 ¶ 34). For his Report, he inspected the Explorer and interviewed Plaintiff. (Docket Nos. 37 ¶ 35; 38 ¶ 35). In the Report, Eng. Baiges observed that: (1) there was considerable damage to the front of the Explorer; (2) the front part of the vehicle was crushed; (3) the maximum crushed measure was between 9 to 10 inches; (4) the crush indicates that the change of speed from the impact was about 22 mph, which is above the threshold for airbag activation; (5) the steering wheel shows deformation from the impact; (6) the front passenger's air bag did deploy, which suggests that the crash sensor detected an event that required airbag deployment; (7) the driver's front air bag did not deploy even though the front passenger's airbag did deploy; (8) having one frontal air bag deploy and the other not deploying is indicative of a defective operation of the nondeployed airbag or other parts of the system that would have prevented this airbag to deploy; (9) the deformed steering wheel and the chest injuries of Mr. Timothy Burke indicate that he underwent forward motion, but was restrained by either the seatbelt, the steering wheel or both, and (10) that the length of the seatbelt available in this locked position is long enough to allow a man of Mr. Timothy Burke's size to be seated with the seatbelt on. (Docket Nos. 37 ¶ 36; 38 ¶ 36).

---

[2] Defendant contested said fact but failed to properly meet the record citation requirement. The pages cited by Defendant are not relevant to the contested fact. "An assertion of fact ... shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." <u>See</u> L. Cv. R. 56(e) (D.P.R. 2009).

Based on the available evidence and his own expertise, Eng. Baiges concluded in his Report that: (1) the July 6th, 2016 accident suffered by Plaintiff in his Explorer was an impact above 22 mph and was an event that required airbag deployment; (2) Plaintiff was wearing his seatbelt and impacted the steering wheel because of the impact; (3) the passenger's front airbag deployed but the driver's front airbag did not deploy; (4) the deployment of the driver's side airbag in Explorer would have provided greater safety to Plaintiff; (5) the seatbelt system did not prevent Plaintiff's injuries to his ribs and arm; (6) the driver's front airbag of the Explorer should have deployed in this accident but did not deploy; (7) the airbag system was defective since it did not perform as expected which was to deploy in a crash at 22 mph; (8) the Supplemental Restraining System in this vehicle was defective; (9) the defective operation and lack of deployment of the driver's side airbag in the Explorer created a situation that led to the severity of his injuries, and (10) given that a seatbelt system is an effective restraint system by itself, it can be said that in this accident the driver's side seatbelt system did not perform as expected and therefore was defective (Docket Nos. 37 ¶ 37; 38 ¶ 37).

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (internal citations omitted).

**Civil No. 17-1763 (GAG)**

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that either the materials cited by the movant "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that a genuine issue of material fact remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the Court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the nonmoving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

### III. Legal Analysis

Defendant argues summary judgment is warranted since Plaintiff's only expert witness, Eng. Baiges, cannot be considered expert in the areas necessary to prove a design or manufacturing defect in the Explorer or to establish that his injuries were proximately caused or enhanced by them. (Docket No. 29 at 2). Plaintiff, on the other hand, avers that the Eng. Baiges is qualified as

**Civil No. 17-1763 (GAG)**

an expert in the present case and his expert testimony does meet the *prima facie* burden for a manufacturing or design defect in a driver's airbag and seatbelt. (Docket No. 37 at 4).

    A. Eng. Baige's Qualifications

Fed. R. Evid. 402 is the baseline for approaching questions of the admissibility of evidence. This rule states that "[a]ll relevant evidence is admissible," except as otherwise provided by the Constitution, laws, or rules of the Court. "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Mitchell v. United States, 141 F.3d 8, 9 (1st Cir. 1998) (citing FED. R. EVID. 401). The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The judge, as a gate-keeper, must ensure an expert's testimony is both relevant and is based on a reliable foundation.[3] See Daubert v. Merrell Dow Pharms., 509 U.S. 579, 597 (1993); see also U.S. v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002). "Proponents . . . do not have to demonstrate that

---

[3] The Court in Daubert identified four factors that may assist the trial court in determining whether or not scientific expert testimony was reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." Mooney, 315 F.3d at 62 (citing Daubert, 509 U.S. at 593-94). The factors are not a checklist for the trial judge to follow, but rather the inquiry is a flexible one, allowing the trial judge to determine and adapt these factors to fit the particular case at bar. See Kumho Tire Co., Ltd. V. Carmichael, 526 U.S. 137, 150 (1999); see also Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15-16 (1st Cir. 2011).

**Civil No. 17-1763 (GAG)**

the assessments of their experts are correct, only that their opinions are reliable." Rivera-Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP, 2008 WL 2446331, at *2 (D.P.R. 2008) (citing Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)). Finally, the Court enjoys substantial discretion to decide whether to admit or exclude relevant expert testimony. See General Elec. Co. v. Joiner, 522 U.S. 136 (1997).

Plaintiff, at this stage of the case, has clearly proved to the Court Eng. Baige's qualifications to render an opinion regarding the matter at hand. Eng. Baiges has bachelor and graduate degrees in mechanical engineering from UPR Mayagüez, MIT, and the University of Florida. He has been a professor in the school of engineering at UPR Mayagüez for over 24 years, and in his courses he covers accident reconstruction and forensic engineering and applies engineering sciences to accidents in general. Furthermore, he has worked in multiple cases as an expert regarding vehicle accident reconstruction and product liability. He has worked in over 100 cases as expert witness and has been qualified as an expert witness in state court and Federal Court. Finally, Eng. Baiges considers himself an expert in accident reconstruction and biomechanics, and as part of his experience in accident reconstruction has become knowledgeable about the operation of seatbelts and airbags as a passenger restraint device.

Based on the Complaint, an inspection of Plaintiff's vehicle, Plaintiff's medical records, airbag and seatbelt literature, and his own expertise, Eng. Baiges concluded in his Report that: The July 6th, 2016 accident suffered by Plaintiff in his Explorer was an impact above 22 mph and was an event that required airbag deployment. Nonetheless, the driver's front airbag did not deploy. The deployment of the driver's side airbag would have provided Plaintiff greater safety. The airbag system is defective since it did not perform as expected which was to deploy in a crash at 22 mph.

**Civil No. 17-1763 (GAG)**

Furthermore, the defective operation and lack of deployment of the driver's side airbag Plaintiff's Explorer created a situation that led to the severity of his injuries.

Eng. Baiges' technical and specialized knowledge will help the trier of fact in the present case determine whether the driver's airbag and seatbelt contained any manufacturing or design defect which caused Plaintiff's injuries. His inspection of the Explorer and his subsequent Report makes his testimony sufficiently based on facts and data produced by reliable methods. Furthermore, Eng. Baiges has clearly applied the principles and methods of his expertise in accident reconstruction to the facts of the case. See FED. R. EVID. 702. The Court, within its discretion, finds that Eng. Baiges is qualified as an expert in the present case and that his expert testimony is reliable and relevant to assist the trier of fact. Therefore, the Court finds that Eng. Baige's testimony is admissible and leaves its credibility to the jury.

Defendant's motion for summary judgment was solely based on the argument that Plaintiff's only expert witness, Eng. Baiges, was not qualified as an expert for the present case; thus, it put forward that Plaintiff lacked evidence to prove a *prima facie* case of design or manufacturing defect existed which proximately caused or enhanced his injuries. (Docket No. 29 at 2). Defendant does not argue that the expert testimony proffered by Eng. Baiges is insufficient to meet the *prima facie* requirements in the present claim.[4] As such, the motion for summary judgment at Docket No. 29 is **DENIED**.

---

[4] The expert testimony provided by Eng. Baiges, in which he concludes that the flaw in Plaintiff's airbag and seatbelt caused or enhanced his injuries, does meet the *prima facie* requirements. See Perez-Trujillo v. Volvo Car Corp. (Sweden), 137 F.3d 50, 53 (1st Cir. 1998); see also Vazquez-Filippetti v. Banco Popular de Puerto Rico, 504 F.3d 43, 52 (1st Cir. 2007).

Civil No. 17-1763 (GAG)

**IV. Conclusion**

For the reasons stated above, Defendant's Motion for Summary Judgment at Docket No. 29 is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of February, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge